**IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
WESTERN DIVISION**

**JULIE JO SMITH**                                                                                                **PLAINTIFF**

**VS.**                              **CASE NO. 4:11CV00642  HDY**

**MICHAEL J. ASTRUE, Commissioner,
    Social Security Administration**                                        **DEFENDANT**

**ORDER**

Plaintiff has appealed the final decision of the Commissioner of the Social Security Administration to deny her claim for disability insurance benefits (DIB) and supplemental security income (SSI).  In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision.  42 U.S.C. § 405(g).

This Court's review function is limited to determining whether the Commissioner's findings are supported by substantial evidence on the record as a whole.  *See Prosch v. Apfel*, 201 F.3d 1010, 1012 (8th Cir. 2000).  "Substantial evidence is less than a preponderance, but is enough that a reasonable mind would find it adequate to support the Commissioner's conclusions." *Id*. The Court may not reverse merely because evidence would have supported a contrary outcome.  *See id*.

The only disputed issue in this case is whether plaintiff is disabled within the meaning of the Social Security Act.  Plaintiff bears the burden of establishing a physical or mental impairment that will result in death, or that has lasted twelve months or more and has prevented her from engaging in any substantial gainful activity.  42 U.S.C. § 423 (d)(1)(A); 42 U.S.C. § 1382c(3)(A) and (B).

Plaintiff filed for SSI and DIB on May 19, 2008. In her application she alleged she became disabled on May 19, 2008, but she later amended her onset date to August 17, 2007. Her applications were denied initially and upon reconsideration, and she requested a hearing before an administrative law judge (ALJ).

Plaintiff was 47 years old at the time of the hearing, which was conducted on April 8, 2010. (Tr. 25-50). The plaintiff and a vocational expert testified at the hearing. The plaintiff testified that she obtained a GED after attending high school through the eleventh grade, that she can read and write, make change, and do simple math. (Tr. 30). She lives with her three kids, aged 23, 13, and 12. (Tr. 31). She stated that she received unemployment benefits following her last job working in a factory making boxes. (Tr. 34). She described other work as a cashier at a convenience store, and indicated she had previously work at numerous other factory jobs, starting at the age of sixteen. (Tr. 35). The plaintiff testified that she left her last job in August of 2007 after she "got stressed out." (Tr. 36). She also testified to passing out in 2007, breaking her tailbone and smashing four vertebrae. The result of this fall is that she now hurts 99 percent of the time. (Tr. 37). She stated that her thyroid was removed. (Tr. 38). She indicated that she has low back pain that moves into her hips and arms, and that she takes muscle relaxers, a swelling reducer, multivitamins, thyroid medicine, cholesterol medicine, and Aleve. (Tr. 39). The plaintiff stated that she drove a pickup truck and did housework, but further stated "I don't do hardly anything during the day," doing laundry every two weeks and cooking "a little bit." (Tr. 40). She indicated she occasionally went to the grocery store, but that she could only walk about 100 feet. (Tr. 40). She estimated she could stand for 5-10 minutes and lift, at the most, 5 pounds. (Tr. 41). On questioning from her attorney, the plaintiff stated her pain is in her middle back, but radiates "clear down to her toes." (Tr. 42).

She used a donut as a sitting device at the hearing, and leaned forward, which helped "a little bit" with the pain. (Tr. 42). She testified that she lays on her right side once or twice a day for about two hours to relieve the pain. According to the plaintiff, she has trouble tying shoes and putting on her socks. Also, she stated that she takes hormones because she does not have a thyroid, and the hormones cause her to have problems with dealing with heat and cold, and they make her very tired. On the other hand, when she does not take her hormones she has pain throughout her body and her doctor warned her that she could go into a coma. (Tr. 44). The plaintiff also stated she has numbness in her right arm. (Tr. 45). The vocational expert testified that the plaintiff's past relevant work as a cashier and an assembler was unskilled light work. (Tr. 47). The ALJ asked if a person who could perform a full range of light work with a sit/stand option could perform the job of cashier or assembler. The vocational expert explained that the plaintiff's past work did not appear to have been performed with the sit/stand option, but that there are cashier jobs that contain a sit/stand option. (Tr. 47). In addition, the vocational expert stated there were inspector jobs that would be light in exertional range and have a sit/stand option that such a person could perform. (Tr. 48). A second question was posed, asking the vocational expert to assume a sit/stand option but with sedentary, rather than light, work. The expert indicated that there were jobs available to such a person, including the jobs of cashier, gate guard, and surveillance guard. (Tr. 48). Finally, the vocational expert found no jobs would be available if the hypothetical worker missed up to three days a month due to pain. (Tr. 49).

  The plaintiff has past relevant work experience as a cashier and an assembler. On July 19, 2010, the ALJ found the plaintiff was not disabled as defined in the Social Security Act. (Tr. 9-19). The ALJ specifically found the plaintiff has the following severe impairments: degenerative disc

disease of the lumbar spine, bulging discs from L3-4 to L5-S1, hypothyroidism, osteoarthritis, and epicondylitis. The ALJ found, however, that she did not have an impairment or combination of impairments listed in, or medically equal to one listed in Appendix 1, Subpart P, Regulations No. 4. The ALJ found the plaintiff has the residual functional capacity to perform the full range of light work. The ALJ discounted the plaintiff's credibility, finding that her subjective allegations were not fully credible to the extent alleged. Relying upon the testimony of the vocational expert, the ALJ determined the plaintiff is capable of performing her past relevant work as a cashier and assembler. As a result, the ALJ concluded that the plaintiff was not disabled. The Appeals Council, on July 15, 2011, denied plaintiff's request for review (Tr. 1-3), and plaintiff subsequently filed suit with this Court.

The ALJ considered her impairments by way of the familiar five-step sequential evaluation process.

The first step involves a determination of whether the claimant is involved in substantial gainful activity. 20 C.F.R. § 404.1520(b). If the claimant is, benefits are denied; if not, the evaluation goes to the next step.

Step two involves a determination, based solely on the medical evidence, of whether the claimant has a severe impairment or combination of impairments. *Id.*, § 404.1520©); *see* 20 C.F.R. § 404.1526. If not, benefits are denied; if so, the evaluation proceeds to the next step.

Step three involves a determination, again based solely on the medical evidence, of whether the severe impairment(s) meets or equals a listed impairment which is presumed to be disabling. *Id.*, § 404.1520(d). If so, benefits are awarded; if not, the evaluation continues.

Step four involves a determination of whether the claimant has sufficient residual functional

capacity, despite the impairment(s), to perform past work. *Id.*, § 404.1520(e). If so, benefits are denied; if not, the evaluation continues.

Step five involves a determination of whether the claimant is able to perform other substantial and gainful work within the economy, given claimant's age, education and work experience. *Id.*, § 404.1520(f). If so, benefits are denied; if not, benefits are awarded.

In support of her request for reversal, plaintiff advances two arguments: (1) the ALJ erred in finding that the plaintiff does not meet a listed impairment; and (2) the ALJ failed to fully and fairly consider the disabling affects of the pain plaintiff experiences due to spinal stenosis and degenerative disc disease. *Pl.'s App. Br.* at 7-17.

The plaintiff's first argument is that she met Listing 1.04C, which provides in pertinent part:

> 1.01 *Disorders of the Spine* (e.g., . . ., spinal stenosis, . . ., degenerative disc disease . . .) resulting in compromise of a nerve root (including the cauda equina) or the spinal cord.  With:
> 
> C.   Lumbar spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging, manifested by chronic nonradicular pain and weakness, and resulting in inability to ambulate effectively, as defined in 1.00B2b.

We are guided by the Eighth Circuit in an understanding of what constitutes an "inability to ambulate effectively." "Inability to ambulate effectively means an extreme limitation of the ability to walk." *Id.* § 1.00(B)(2)(b)(1). "Ineffective ambulation is defined generally as having insufficient lower extremity functioning ... to permit independent ambulation without the use of a hand-held assistive device." *Id.* Section 1.00(B)(2)(b)(2) further provides:

> *To ambulate effectively,* individuals must be capable of sustaining a reasonable walking pace over a sufficient distance to be able to carry out activities of daily living. They must have the ability to travel without companion assistance to and from a place of employment or school. Therefore, examples of ineffective ambulation include, but are not limited to, the inability to walk without the use of a walker, two crutches or two canes, the inability to walk a block at a reasonable

> pace on rough or uneven surfaces, the inability to use standard public transportation, the inability to carry out routine ambulatory activities, such as shopping and banking, and the inability to climb a few steps at a reasonable pace with the use of a single hand rail.

*Schultz v. Astrue*, 479 F.3d 979, 982 (8th Cir. 2007). In this instance, the plaintiff has been diagnosed with spinal stenosis and the ALJ found she has the severe impairment of degenerative disc disease. However, the Listing requires more than a diagnosis – the plaintiff must show an inability to ambulate effectively. The plaintiff points to her testimony of difficulty in getting around, but this does not satisfy the requirement to meet the Listing. The ALJ did not err by failing to find the plaintiff met the Listing.

The second claim of the plaintiff is that the ALJ failed to fully and fairly consider the disabling affects of the pain plaintiff experiences due to spinal stenosis and degenerative disc disease. As previously noted, the plaintiff testified to severe pain. The ALJ discounted this testimony, discussing the factors set forth in *Polaski v. Heckler*, 751 F.2d 943 (8th Cir. 1984). The essence of this claim is whether the ALJ's credibility assessment is supported by substantial evidence.

In his opinion, the ALJ cited the following factors which resulted in his credibility holding: (1) plaintiff's work history, which he found neither enhanced or diminished her credibility; (2) plaintiff's testimony that she stopped working for reasons which were not related to her disabling impairments; (3) plaintiff's receipt of unemployment benefits until about six months before the April 2010 hearing (plaintiff stopped working in August of 2006 and alleged she was disabled since August 17, 2007); (4) the fact that the plaintiff did not take narcotic pain medication; (5) plaintiff testified to side effects from her medications, but the objective medical records did not corroborate this testimony; (6) the absence of any physician-imposed limitations

or any physician's opinion that the plaintiff was disabled[1]; and (7) the timing of the plaintiff's medical care following her August 2007 injury (following treatment for the injury in August, she was seen in the emergency room on September 5 and September 23, 2007, then next seen in August of 2008 by Dr. Hagaman, then next seen in June 2009 by Dr. Williamson).  Having reviewed the record and the ALJ's thorough analysis of the *Polaski* factors, we find substantial evidence supports the credibility determination.  In particular, the absence of physician-imposed limitations, the absence of narcotic pain medication, and the gaps in time during which treatment was not sought support the ALJ's conclusion.  As a result, we find no error in the ALJ's consideration of the plaintiff's pain due to spinal stenosis and degenerative disc disease.

In summary, there is no merit to the arguments advanced by the plaintiff.

IT IS THEREFORE ORDERED that the final decision of the Commissioner is affirmed and plaintiff's complaint is dismissed with prejudice.

IT IS SO ORDERED this    10    day of February, 2012.

_____
UNITED STATES MAGISTRATE JUDGE

---

[1] Treating physician Reardon opined in January of 2010 that plaitniff has "underlying abnormalities of her spine" but that she had not tried "neurosurgery, pain management or physical therapy."  As a result, Dr. Reardon opined that she was not disabled. (Tr. 343).